ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| MATTHEW WINTER<br><br>Recurrido<br><br>v.<br><br>KIMBERLY WINTER<br><br>Peticionaria | **KLCE202401131** | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de Fajardo<br><br>Civil Núm.: RG2024RF00022<br><br>Sobre: DIVORCIO (R.I.) |
|---|---|---|

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Bonilla Ortiz, la Jueza Mateu Meléndez y la Jueza Prats Palerm.

Bonilla Ortiz, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico a 25 de noviembre de 2024.

Comparece ante este foro, la Sra. Kimberly Winter (señora Winter o "la peticionaria") y nos solicita que revisemos una *Orden* emitida por el Tribunal de Primera Instancia, Sala Superior de Fajardo, notificada el 6 de septiembre de 2024. Mediante el referido dictamen, el foro primario determinó que ambas partes debían sufragar la tarifa del chofer que transporta al menor a la escuela.

Por los fundamentos que se exponen a continuación, **DENEGAMOS** expedir el recurso de *certiorari*.

### I.

Según surge del expediente, el 27 de febrero de 2024, el Sr. Matthew Winter (señor Winter o "el recurrido") presentó ante el foro primario una *Demanda* de divorcio en contra de la señora Winter. Además de la disolución del vínculo matrimonial, el señor Winter había solicitado que se determinaran los asuntos

Número Identificador
RES2024 _____

requeridos por ley con relación al menor, HMW, procreado por las partes durante el matrimonio.

Luego de varias incidencias procesales, el 2 de abril de 2024, el foro primario ordenó a que el menor, hijo de las partes, fuera matriculado en Baldwin School en Guaynabo, para el año académico 2024-2025.[1]

El 13 de mayo de 2024, el señor Winter, presentó un *Escrito Informando Aceptación de Capacidad Económica*.[2] En síntesis, esbozó que aceptaba capacidad económica a los fines de responsabilidad ante su hijo, relacionada con la pensión alimentaria.

El 19 de agosto de 2024, el señor Winter presentó una *Urgente Solicitud de Orden*.[3] En esencia, esbozó que el foro primario determinó, entre otras cosas, que el recurrido sería quien buscaría y entregaría al menor en la propiedad de la peticionaria, la cual está ubicada en Río Grande, de domingo a miércoles. No obstante, sostuvo que la señora Winter era quien debía llevar al menor los jueves y viernes al colegio, pero que la peticionaria se había negado, alegando que era responsabilidad del padre llevar y recoger al menor. Por ello, solicitó se le ordenara a la peticionaria a que recogiera al menor los miércoles en la tarde al colegio, y los jueves y viernes de cada semana. En la alternativa, planteó que fueran enmendadas las relaciones filiales, para que el menor pernoctara con el padre durante la semana.

El 20 de agosto de 2024, la señora Winter presentó una *Urgente Réplica a Solicitud de Orden*.[4] Mediante

---

[1] *Orden*, anejo II, págs. 5-6 del apéndice del recurso.
[2] *Escrito Informando Aceptación de Capacidad Económica*, anejo III, pág. 7 del apéndice del recurso.
[3] *Urgente Solicitud de Orden*, anejo VI, págs. 12-15 del apéndice del recurso.
[4] *Urgente Réplica a Solicitud de Orden*, anejo VII, págs. 16-19 del apéndice del recurso.

esta, alegó que, había sido el recurrido quien se había ofrecido a buscar y llevar al menor al colegio. A su vez, indicó que nunca había negado su obligación con el menor, pero que su responsabilidad no sería bajo las exigencias y requerimientos irrazonables del recurrido. Añadió, que tiene otro hijo que tomaba clases en línea, por lo que se le dificultaba llevar al menor personalmente al colegio. Por ello, solicitó que el señor Winter pagara al chofer para que llevara y trajera al menor al Colegio, o en la alternativa, fuera la cuidadora, quien trabaja para la familia.

En la misma fecha, el señor Winter presentó una *Dúplica a "Urgente Réplica a Solicitud de Orden"*.[5] Alegó que, fue durante las clases del campamento de verano que se había comprometido a transportar al menor. A su vez añadió que, no había necesidad de contratar a un chofer, cuando la peticionaria tenía un vehículo y licencia de conducir. Finalmente indicó que, de insistir la señora Winter en la contratación del chofer, debía sufragarlo ella.

Así las cosas, el 21 de agosto de 2024, el foro primario notificó una *Orden*, mediante la cual determinó lo siguiente:[6]

> El padre deberá recoger al menor los miércoles en la escuela y llevarlo a su residencia en Rio Grande, toda vez que el padre conocía la determinación del tribunal sobre relaciones paterno filiales cuando solicitó que el menor fuera matriculado en una escuela en Guaynabo.
>
> Será responsabilidad de la madre llevar y buscar al menor a la escuela los días jueves y viernes. En caso de que la madre no pueda realiza esta gestión, se autoriza a alguno de los choferes que trabajan para ellos, mientras estaban casados, y que

---

[5] *Dúplica a "Urgente Réplica a Solicitud de Orden"*, anejo VIII, págs. 29-33 del apéndice del recurso.
[6] *Orden*, anejo IX, pág. 34 del apéndice del tribunal.

transportaban al hijo mayor de la Sra. Winter a la escuela. Ello, toda vez que el Sr. Winter ya los conoce.

El 29 de agosto de 2024, la señora Winter presentó una *Moción en Solicitud de Remedio*.[7] En síntesis, esbozó que contactó a uno de los choferes que llegó a utilizar la familia, y le indicó cobraría $150.00 por día. Por ello, le envió la factura del pago al señor Winter, alegando que le respondió que era un gasto irrazonable, y era el recurrido quien debía pagarlo. Por lo tanto, le solicitó al foro primario que ordenara al recurrido a que pagara directamente al chofer.

Así las cosas, en la misma fecha, el foro recurrido emitió una *Orden*, concediéndole cinco (5) días al señor Winter para que expresara su posición, so pena de concederle lo solicitado por la peticionaria.[8]

El 5 de septiembre de 2024, el recurrido presentó una *Moción de Reconsideración en Torno a Orden (SUMAC NÚM. 199)*.[9] En esta, solicitó fuera reconsiderada la orden de permitir que un chofer, sea conocido o no, llevara al menor al colegio. Reiteró que, es la señora Winter quien tiene la responsabilidad de llevar y buscar al menor a la escuela. No obstante, el foro primario denegó la moción.[10]

Por otra parte, el señor Winter presentó un *Escrito en Cumplimiento de Orden*.[11] Mediante el cual, alegó que se encontraba vigente una orden provisional de pensión alimentaria, la cual proveía para que éste sufragara los

---

[7] *Moción en Solicitud de Remedio*, anejo X, págs. 35-36 del apéndice del recurso.
[8] *Orden*, anejo XI, págs. 39-40 del apéndice del recurso.
[9] *Moción de Reconsideración en Torno a Orden (SUMAC NÚM. 199)*, anejo XII, págs. 41-44 del apéndice del recurso.
[10] *Orden*, aneo I, págs. 2-3 del apéndice del recurso.
[11] *Escrito en Cumplimiento de Orden*, anejo XIII, págs. 45-48 del apéndice del recurso.

gastos del menor cuando se encontrara con la peticionaria. A su vez, que aun cuando aceptó capacidad económica, no surgía que el gasto del chofer fuera uno razonable. Sostuvo que, mientras el menor se encontrara en la custodia de la señora Winter, era responsabilidad de ésta llevar al menor al colegio y de ser un tercero quien lo hiciera, debía ella sufragar el gasto.

El 6 de septiembre de 2024, el foro primario notificó una *Orden*,[12] mediante la cual determinó lo siguiente:

> Examinadas las mociones presentadas por las partes en cuanto al asunto de a quien le corresponde pagar la tarifa del chofer que lleva al menor a la escuela, se determina que la misma será sufragada por las partes en partes iguales.

En desacuerdo, el 16 de septiembre de 2024, la señora Winter presentó una *Moción en Solicitud de Reconsideración a Orden del 6 de septiembre de 2024*.[13] En esta, reiteró que el recurrido había asumido capacidad económica en el caso de alimentos, por lo que, debía de ser responsable de todos los gastos del menor.

Por su parte, el 18 de septiembre de 2024, el señor Winter presentó su Oposición a "*Moción en Solicitud de Reconsideración a Orden del 6 de septiembre de 2024*".[14] En esencia, alegó que la peticionaria no cumplió con la Regla 47 de Procedimiento Civil, al repetir los mismos argumentos de mociones pasadas.

Así las cosas, el 19 de septiembre de 2024, el foro recurrido denegó la moción de reconsideración.[15]

---

[12] *Orden*, aneo I, pág. 3 del apéndice del recurso.
[13] *Moción en Solicitud de Reconsideración a Orden del 6 de septiembre de 2024*, anejo XIV, págs. 49-51 del apéndice del recurso.
[14] Oposición a "*Moción en Solicitud de Reconsideración a Orden del 6 de septiembre de 2024*", anejo XV, págs. 52-54 del apéndice del recurso.
[15] *Orden*, anejo XVI, págs. 55-56 del apéndice el recurso.

Aun inconforme, el 18 de octubre de 2024, la señora Winter presentó el *certiorari* de epígrafe, mediante el cual sostuvo el siguiente señalamiento de error:

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL ORDENAR A LAS PARTES SUFRAGAR EN PARTES IGUALES EL PAGO DEL CHOFER QUE LLEVA AL MENOR A LA ESCUELA PESE A QUE LA PARTE DEMANDANTE-RECURRIDA ASUMIÓ CAPACIDAD ECONÓMICA PARA CUBRIR TODAS LAS NECESIDADES DEL MENOR.

El 28 de octubre de 2024, el señor Winter presentó su *Oposición a la Expedición del Auto de Certiorari.*

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II.

### -A-

El auto de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391 (2021); *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *IG Builders et al. v. BBVAPR,* 185 DPR 307, 337-338 (2012).

Contrario al recurso de apelación, la expedición o no del auto de *certiorari* solicitado descansa en la sana discreción del foro apelativo. *Torres González v. Zaragoza Meléndez,* supra; *Medina Nazario v. McNeill Healthcare LLC*, 194 DPR 723, 729 (2016). Así, la característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *IG Builders et al. v. BBVAPR*, supra. En el ámbito judicial, la discreción del tribunal revisor no debe abstraerse del resto del Derecho y, por lo tanto, es una forma de

razonabilidad aplicada al discernimiento judicial para así llegar a una conclusión justiciera. *Mun. Caguas v. JRO Construction*, 201 DPR 703, 712 (2019); *IG Builders et al. v. BBVAPR*, supra, pág. 338.

En particular, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece los preceptos que regulan la expedición discrecional que ejerce el Tribunal de Apelaciones sobre el referido recurso para la revisión de sentencias y resoluciones dictadas por el Tribunal de Primera Instancia. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *McNeil Healthcare v. Mun. Las Piedras I*, supra; *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 709 (2019). En lo que nos atañe, esta regla dispone lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.
>
> Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Con el fin de que podamos ejercer de una manera sabia y prudente nuestra facultad discrecional de entender o no en los méritos de los asuntos que son planteados mediante el recurso *certiorari*, nuestros

oficios se encuentran enmarcados en el Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B que en su Regla 40 señala los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008). La referida regla dispone lo siguiente:

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad, o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Los foros de instancia ostentan un alto grado de discreción en el manejo procesal de un caso. *Meléndez Vega v. Caribbean Intl. News*, 151 DPR 649, 664 (2000). Como es de conocimiento, en nuestro ordenamiento jurídico impera la norma de que un tribunal apelativo sólo intervendrá con las determinaciones interlocutorias discrecionales procesales del tribunal sentenciador cuando este último haya incurrido en arbitrariedad o en un craso abuso de discreción. *García v. Asociación,* 165

DPR 311 (2005); *Meléndez Vega v. Caribbean Intl. News*, supra, pág. 664; *Lluch v. España Service Sta.*, 117 DPR 729 (1986); *Valencia Ex Parte*, 116 DPR 909 (1986).

El adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414 (2013); *Rivera Durán v. Banco Popular*, 152 DPR 140, 155 (2000). Por ende, si no se encuentra presente en la petición ante nuestra consideración ninguno de los criterios antes transcritos y la actuación del foro primario "no está desprovista de base razonable ni perjudica derechos sustanciales de una parte, lo lógico es que prevalezca el criterio del juez de instancia a quien corresponde la dirección del proceso." *Sierra v. Tribunal Superior,* 81 DPR 554, 572 (1959). De manera que, solo intervendremos con el ejercicio de dicha discreción en aquellas instancias que se demuestre que el foro recurrido: (1) actuó con prejuicio o parcialidad; (2) incurrió en un craso abuso de discreción; o (3) se equivocó en la interpretación de cualquier norma procesal o de derecho sustantivo. *Rivera Durán v. Banco Popular*, supra, pág. 154.

En armonía a lo anterior, es de conocimiento que nuestro sistema judicial es adversativo y rogado, el cual descansa sobre la premisa de que las partes son los mejores guardianes de sus derechos e intereses. *Bco. Bilbao v. González Zayas*, 155 DPR 589, 594 (2001); *SLG Llorens v. Srio. De Justicia*, 152 DPR 2, 8 (2000).

Es norma reiterada en nuestro ordenamiento jurídico que, en ausencia de un craso abuso de discreción o arbitrariedad por parte del foro primario, los tribunales apelativos no intervendrán con sus

determinaciones interlocutorias discrecionales procesales. *García v. Asociación*, 165 DPR 311, 322 (2005).

**-B-**

El deber de alimentar a los hijos es inherente a la paternidad y maternidad. *De León Ramos v. Navarro Acevedo,* 195 DPR 157, 169 (2016). La base estatutaria de esta obligación la encontramos en la Constitución de Puerto Rico, pues emana del propio derecho a la vida consagrado en la Carta de Derechos. Art. II, Sec. 7, Const. PR, LPRA, Tomo 1. Con este principio como referente, el Código Civil de Puerto Rico instituye los lineamientos más generales de la obligación de alimentar a los hijos e hijas menores de edad, mientras que la *Ley Orgánica de la Administración para el Sustento de Menores* (*Ley de ASUME*) y las *Guías Mandatorias para Computar las Pensiones Alimentarias en Puerto Rico* (*Guías Mandatorias*) proveen los parámetros más específicos.

Por alimentos se entiende todo lo que es indispensable para el sustento del menor, su habitación, vestido, recreación, asistencia médica y educación, según la posición social de la familia. Art. 653 del Código Civil, 31 LPRA sec. 7531. Tratándose de un derecho que surge de la filiación, ambos progenitores están obligados a proveer alimentos. Art. 558 del Código Civil, 31 LPRA sec. 7104.

El criterio rector al momento de fijar la cuantía de una pensión alimentaria es que esta sea proporcionada entre los recursos económicos del alimentante y las

necesidades del alimentista.[16] *Llorens Becerra v. Mora Monteserín*, 178 DPR 1003, 1016 (2010). Este precepto, conocido como principio de proporcionalidad, "exige que se establezca un balance entre los intereses del menor y la capacidad económica de aquellos responsables de costear esas necesidades". *De León Ramos v. Navarro Acevedo,* supra, pág. 171. El principio de proporcionalidad se integra tanto en la Ley de ASUME como en los procedimientos descritos en las Guías Mandatorias. *Íd*. Corresponde al juzgador, en el ejercicio de su prudente arbitrio, velar por que la cuantía que se establezca cumpla con el principio de proporcionalidad. *Llorens Becerra v. Mora Monteserín, supra,* pág. 1016; *Guadalupe Viera v. Morell,* 115 DPR 4, 14 (1983).

De otra parte, la Ley de ASUME ordenó la adopción de las Guías Mandatorias para uniformar y facilitar la determinación de pensiones alimentarias mediante el empleo de criterios numéricos y descriptivos, siempre en función de los ingresos de los progenitores. *Torres Rodríguez v. Carrasquillo Nieves,* 177 DPR 728, 762 (2009); *Santiago Texidor v. Maisonet Correa,* 187 DPR 550, 569 (2012). Así pues, el Artículo 19 la Ley de ASUME, hace obligatorio el empleo de los procedimientos

---

[16] El Artículo 146 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 565, disponía que la "[l]a cuantía de los alimentos será proporcionada a los recursos del que los da y a las necesidades del que los recibe […]". El Código Civil de 2020 mantiene un lenguaje similar en su Artículo 665 al disponer que "[l]a cuantía de los alimentos debidos al mayor de edad debe ser proporcional a los recursos del alimentante y a las necesidades del alimentista". Respecto a la cuantía de los alimentos de los hijos menores de edad, el Código Civil vigente dispone que esta "se fija siguiendo los criterios dispuestos en la ley especial complementaria". Art. 666 del Código Civil de 2020, 32 LPRA sec. 7562. Este estatuto especial complementario lo es la *Ley de ASUME*, *supra*.

descritos en las Guías Mandatorias para el cómputo de las pensiones alimentarias: 8 LPRA sec. 518.

> En todo caso en que se solicite la fijación o modificación, o que se logre un acuerdo o estipulación de una pensión alimentaria, será mandatorio que el Tribunal o el Administrador, según sea el caso, determine el monto de la misma utilizando para ello las guías adoptadas a tenor con lo dispuesto en este Artículo.

La determinación de la situación económica del alimentante y de las necesidades del alimentista se viabiliza por medio de un descubrimiento de prueba compulsorio. Artículo 16 de la Ley de ASUME, 8 LPRA § 515. Si bien la ley promueve la utilización de un formulario guía —la *Planilla de Información Personal y Económica* (PIPE)— para recabar la información mínima requerida sobre la capacidad de pago del alimentante, también se permite el empleo de los mecanismos de descubrimiento de prueba provistos en las Reglas de Procedimiento Civil de 2009. *Íd*. Adicional a lo anterior, el Examinador de Pensiones Alimentarias posee la facultad para recomendar una pensión alimentaria provisional cuando, entre otras razones, falta alguna información o prueba. Art. 17 de la Ley de ASUME. Esta permanecerá en vigor hasta que el Juez haga una nueva determinación o dicte una resolución. *Íd*.

-C-

Si bien los foros llamados a determinar y adjudicar las pensiones alimentarias de menores de edad deben actuar dentro de los parámetros establecidos por la Ley de ASUME y las Guías Mandatorias, la jurisprudencia del Tribunal Supremo de Puerto Rico reconoce una notable excepción: cuando un padre o madre alimentante admite que cuenta con medios suficientes para satisfacer sus

obligaciones alimentarias se prescinde, por innecesario, del procedimiento compulsorio de descubrimiento de prueba. *De León Ramos v. Navarro Acevedo*, supra, pág. 173; *Santiago Texidor v. Maisonet Correa*, supra, pág. 565; *Chévere v. Levis Goldstein,* 150 DPR 525, 544 (2000). Esto es lo que se conoce como aceptación de capacidad económica.

> [L]a aceptación de capacidad económica es una decisión voluntaria, que toma un padre o una madre, mediante la cual se compromete a cubrir todas las necesidades que en su día se establezcan como parte de una pensión alimentaria. *De León Ramos v. Navarro Acevedo, supra,* pág. 176.

Como beneficio de aceptar capacidad económica la persona alimentante no puede ser compelida a revelar información sobre su patrimonio*. De León Ramos v. Navarro Acevedo,* supra, pág. 176. A cambio, esta se obliga a cubrir el cien por ciento (100%) de la pensión adjudicada, y queda, además, impedida de impugnar posteriormente la pensión alimentaria que se establezca, aduciendo que carece de los recursos necesarios.

### III.

Debido a que la controversia bajo nuestra consideración versa sobre un asunto de alimentos, podemos revisar discrecionalmente la decisión recurrida vía el auto de *certiorari*, conforme la Regla 52.1 de Procedimiento Civil, *supra*.

En el caso de autos, la señora Winter alega que incidió el foro primario al ordenar que ambos padres sufragaran los gastos del chofer que llevaría al menor al colegio, puesto que, el recurrido había asumido capacidad económica para cubrir las necesidades del menor. Sostiene que, el uso del chofer es exclusivo para el menor y es necesario debido a que el padre

promovió, de manera unilateralmente, que el menor fuera matriculado en un colegio en Guaynabo, cuando éste reside en Río Grande. Por ello, enfatizó que le corresponde al señor Winter pagar el 100% del gasto del chofer.

Por su parte, el recurrido, en esencia sostiene que la peticionaria lo que intenta es desatender las obligaciones que tiene con el menor. Añade que, su obligación es frente a su hijo, excluyendo las necesidades de la señora Winter. Por lo que, plantea que el gasto de transportación no había sido contemplado al aceptar su capacidad económica, ni es un gasto razonable, puesto que, la peticionaria cuenta con medios para satisfacer dicha necesidad. Finalmente, expresa que la decisión del foro primario no resultó ser un abuso de discreción.

Luego de evaluar el expediente y los escritos de las partes, determinamos que el tribunal recurrido no incidió al determinar que ambos padres pagarán la tarifa del chofer. Es preciso señalar que, el padre alimentante, aunque admitió capacidad para satisfacer los gastos razonables del menor, dicho gasto de transportación no había sido evaluado al momento de establecer la pensión alimentaria. A su vez, nuestro ordenamiento jurídico ha establecido que la persona custodia, mediante declaración jurada, está obligada a establecer cuáles son los gastos razonables de los menores para determinar así cuánto debe aportar la persona no custodia. *De León Ramos v. Navarro Acevedo*, *supra,* pág. 175*; Santiago, Maisonet v. Maisonet Correa, supra,* pág. 570.

En virtud de los fundamentos antes discutidos, resolvemos que no medió arbitrariedad o error, ni abuso de discreción del foro de instancia en su determinación al determinar que la tarifa del chofer sería sufragada por ambos progenitores en partes iguales. En consecuencia, nos abstenemos de variar dicho criterio. Tampoco está presente circunstancia alguna de las contempladas en la Regla 40 de nuestro Reglamento, *supra*, que nos permita revocar el dictamen recurrido. Por consiguiente, procedemos a denegar la expedición del auto de *certiorari*.

## IV.

Por los fundamentos antes expuestos, **DENEGAMOS** expedir el auto de *certiorari*.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones